IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KELLY CONOLLY, ) | |
| ) | 8:04CV136 |
| Plaintiff, ) | |
| ) | |
| vs. ) | MEMORANDUM AND ORDER |
| ) | |
| JAMES D. CLARK, ) | |
| ) | |
| Defendant. ) | |

Before the court is the defendant's motion for summary judgment (filing no. 40). The court, having considered the motion, the plaintiff's response, the defendant's reply, and the relevant record and case law, now determines that the defendant's motion for summary judgment should be granted.[1]

## Undisputed Facts

The plaintiff, Kelly Conolly ("Conolly"), was employed as a terminal manager by Clark Bros. Inc. ("Clark Bros."), a trucking company. *See* Clark Dep. at 10-11, 13, 56, 62 (filing no. 43) and Conolly Aff. at 1-2 (filing no. 48). The defendant, James D. Clark ("Clark"), was the president and majority shareholder of Clark Bros. *Id.* In early 2003, Clark and Conolly began discussing the possibilities of Conolly purchasing Clark Bros. *Id.* On October 17, 2003, after months of negotiating, Clark and Conolly executed a Confidentiality Agreement which permitted Conolly to obtain financial information on Clark Bros. to use in his evaluation of the company. *See* Conolly Aff. at 2 (filing no. 48), Clark Dep. at 76 and Exhibit 16 (filing no. 43). Subsequently, on October 28, 2003, Clark sent Conolly a letter in which he specifically asked Conolly to provide him with a written offer to

---

[1] Subsequent to these filings, the defendant filed a motion in limine (filing no. 53) seeking to prohibit certain evidence at trial. Because the court has granted the defendant's motion for summary judgment, defendant's motion in limine is now moot. Accordingly, the defendant's motion in limine (filing no. 53) is denied as moot.

purchase Clark Bros. within ten to fourteen days. *See* Exhibit 27 at 2 (filing no. 43) and Conolly Aff. at 59-62 (filing no. 48). On November 12, 2003, Conolly, through his attorney, sent Clark a "letter of intent," but did not include an offer to purchase Clark Bros. *See* Clark Dep. at 36-38 and Exhibit 4, and Conolly Dep. at 61-65 (filing no. 43). The following day – on November 13, 2003 – Conolly and Clark, and their respective attorneys, met at the office of Clark's attorney to discuss the purchase of the company. *See* Clark Dep. at 83-85 (filing no. 43) and Conolly Aff. at 3 (filing no. 48). Also in attendance were Kurt Grote and Dan Quigley, representatives of GE, a financial company that was to provide financial assistance to Conolly for the purchase of Clark Bros. *Id.* At that time, Conolly and Clark also spoke privately and determined a purchase price of $15.5 million for the stock of the trucking company. *Id.* They, however, left other terms of Conolly's acquisition to be negotiated later. *Id.* That meeting ended with Clark's request that Conolly submit an offer in the form of a "letter of intent" within two weeks or by December 1, 2003. *See* Conolly Aff. at 4 (filing no. 48) and Clark Dep. at 39, 96-98 (filing no. 43). On January 6, 2004, Conolly, through his attorney, sent Clark the "letter of intent." *See* Exhibit 9 (filing no. 43). However, on February 16, 2004, Clark elected to sell the company to another buyer. *See* Clark Dep. at 106-107 (filing no. 43) and Conolly Aff. at 8 (filing. 48).

Conolly has filed the instant action against Clark claiming a breach of contract.[2] Specifically, Conolly claims that, following the November 13, 2003, meeting, he and Clark entered into an oral contract for the purchase of the company and that Clark's decision to sell the company to another buyer constitutes a breach of contract. Clark, on the other hand, filed this motion for summary judgment arguing that no contract to sell the company

---

[2] This court has jurisdiction pursuant to 28 U.S.C. § 1332. There is complete diversity and the amount in controversy exceeds $75,000.

was ever formed between Conolly and himself. Clark claims that there are no genuine issues of material fact with respect to this issue and that summary judgment is warranted. Conolly opposes the motion arguing that genuine issues of material fact exist with respect to whether or not there was a contract formed between the parties and that summary judgment should be denied. For the reasons stated below, the court finds that the defendant's motion for summary judgment should be granted.

## Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The movant bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. *Id.* Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-movant must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial. *Id.* To successfully oppose the motion for summary judgment, the non-movant cannot rest on the pleading alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue. *Id.*

**Discussion**

As indicated above, the defendant seeks summary judgment on the plaintiff's claim of breach of contract. Specifically, the defendant contends that he is entitled to summary judgment because the parties never had a contract for the sale of the trucking company. Defendant contends that there is no genuine issue of material fact with respect to that issue; therefore, his motion should be granted. The court agrees.

*Breach of Contract*

Under Nebraska law, to "establish an express contract, there must be a definite proposal and an unconditional and absolute acceptance thereof."[3] *See Viking Broad. Corp. v. Snell Publ. Co.,* 497 N.W.2d 383, 385-86 (Neb. 1993). In addition, there must be a meeting of the minds "at every point; nothing can be left open for future arrangement." *Cimino v. Firstier Bank*, N.A., 530 N.W.2d 606, 614 (Neb. 1995). "A contract is not formed if the parties contemplate that something remains to be done to establish contractual arrangements or if elements are left for future arrangement." *Neb. Nutrients, Inc. v. Shepherd,* 626 N.W.2d 472, 499 (Neb. 2001). Although the parties' intent to be bound by the contract is a determinative factor in establishing the existence of a contract, the requisite intent is determined by the parties' objective manifestation, not by the parties' subjective intent. *See Viking,* 497 N.W.2d at 385-86. The party seeking the establishment of a contract has the burden of proving the existence of a definite offer and an unconditional acceptance. *Sayer v. Bowley,* 503 N.W.2d 166, 169 (Neb. 1993).

In this case, the plaintiff argues that on November 13, 2003, he reached an oral agreement with the defendant for the sale of the trucking company. According to the

---

[3] Nebraska law applies in this diversity case. *See Erie R. Co. v Tompkins,* 304 U.S. 64 (1938).

4

plaintiff, he and the defendant previously discussed the possibility of buying the trucking company and by this time they had reached an agreement. Plaintiff claims that he and defendant orally agreed to close the sale on March or April of 2004, and that the oral agreement would be memorialized by the parties prior to that date. The record, however, indicates that the defendant never had an oral agreement, that they were only negotiating, and that non-binding terms were the basis of their negotiations. The record contains ample evidence which demonstrates that after November 13, 2003, the parties had yet to reach an agreement and that they were still negotiating. For example, on November 14, 2003, plaintiff sent an e-mail to one of his financial officers in which he stated:

> "As per discussion, Jim Clark [the defendant] agreed to carry back 1 million of the purchase price. **Also, the 15.5 purchase price is firm, however, the assumption of debt is not firm and therefore negotiable.** Jim mentioned that he realistically wants to hit the 17 million area if we assumed no debt." (Emphasis added.)

*See* Exhibit 36 (filing no. 43). On December 12, 2003, the plaintiff sent another e-mail – this time to the defendant – which stated:

> "After performing a large portion of the due diligence in respect to the financial aspect of a deal, **I would put forth this proposal . . . Please review this and let me know your thoughts. Of course this is just preliminary and a formal proposal will be forthcoming once we reach an agreement."** (Emphasis added.)

*See* Exhibit 13 (filing no. 43). On January 6, 2004, a letter of intent was sent by the plaintiff's attorney to the defendant stating:

> "Our law firm represents Kelly Conolly ("Buyer"). **Mr. Conolly is interested in pursuing the possible purchase of substantially all the assets or stock of Clark Bros., Inc., ("Seller") pursuant to the terms in this non-binding letter of intent**. . . . **It is understood that this is merely a non-binding letter of intent,** subject to Buyer's satisfaction of its investigation of Seller and assets, and the execution by you

5

and Buyer of the definitive purchase agreement, **and does not represent a binding commitment by either Seller or Buyer. . . .** " (Emphasis added.)

*See* Exhibit 9 (filing no. 43).  In addition, in his deposition, the plaintiff indicated:

> Q. Is it your testimony under oath here today that in the November 13 meeting with Mr. Clark, that you and Mr. Clark agreed to all the terms and conditions of the transaction for you to purchase Clark Bros. Stock?
>
> A. Yes.
>
> Q. And there was nothing else left to negotiate.  Is that your testimony?
>
> A. No, that's not my testimony.
>
> Q. There were other terms and conditions left to negotiate?
>
> A. There was other, yes.  Because there was more information that Jim was to provide.
>
> Q. And, in fact, that's what Mr. Grote's statement says?
>
> A. Correct.
>
> Q. There were more terms and conditions to negotiate because there were further information that Mr. Grote requested of you, correct?
>
> A. Correct.
>
> Q. And that was your understanding, correct?
>
> A. Yes.

*See* Conolly Dep. at 91-92 (filing no. 43).  With respect to the proposal plaintiff made to the defendant in the December 12 e-mail, the plaintiff testified as follows:

> Q. [The proposal] says, "Payment for non-compete and other considerations would be one million payable over 5 years." Did you propose that?
>
> A. Correct.

6

> Q. What are other considerations?
>
> A. That would be the rep and warranties, carryback.
>
> Q. So those had yet to be all worked out, correct?
>
> A. Correct.
>
> Q. And I take it those are something that would be decided in the definitive purchase agreement?
>
> A. Right.

*See* Conolly Dep. at 113-14 (filing no. 43).  The record in this case clearly indicates that the parties did not have a contract by November 13, 2003.  If anything, the record indicates that after this date the plaintiff and the defendant were still contemplating an agreement, that they were negotiating, and that they still had unresolved contractual terms to address.  As previously stated, under Nebraska law a contract is not formed if the parties contemplate to resolve any contractual terms or arrangements in the future.  *See Neb. Nutrients, Inc.,* 626 N.W.2d at 499 (2001).  Here the parties clearly had contractual issues to resolve after November 13, 2003.  The record shows that there were terms that still needed to be negotiated by the parties after that day.

Furthermore, the record indicates that all the parties' negotiations were intended to be non-binding.  The plaintiff's communications with the defendant and others made that clear.  In his affidavit, the plaintiff attempts to explain what he meant by his communications to the defendant after November 13, in an effort to overcome the non-binding terminology he used in his communications.  However, the objective evidence of e-mails, the letter of intent of January 6, and his deposition clearly establish that plaintiff did not intend to be bound by the proposals he made to the defendant and that there were

7

several contractual matters that needed to be resolved before the parties could enter into any kind of contract.

In this case, the record falls short of indicating a definitive proposal by the plaintiff and an unconditional and absolute acceptance by the defendant by November 13, 2003, or at any time after that day. There are no genuine issues of material fact with respect to these issues – which must exist under Nebraska law for the plaintiff to establish an express contract between the parties. *See Viking Broad. Corp.,* 497 N.W.2d at 385-86. Consequently, the defendant is entitled to judgment as a matter of law and his motion for summary judgment should be granted.[4]

IT IS HEREBY ORDERED:

1. That the defendant's motion for summary judgment (filing no. 40) is granted; and

2. That the defendant's motion in limine (filing no. 53) is denied as moot.

DATED this 23rd day of August, 2005.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge

---

[4] In his brief in support of his motion for summary judgment, the defendant also asserts an affirmative defense under the Statute of Frauds. Specifically, he claims that under the Statute of Frauds the plaintiff is prevented from bringing a claim for breach of contract. However, having determined that the plaintiff has failed to establish the existence of a definitive offer and an unconditional acceptance to establish a claim for breach of contract, it is not necessary for the court to address the merits of the defendant's defense under the Statute of Frauds.